# United States Court of Appeals

Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia  30303

**Thomas K. Kahn**
Clerk

For rules and forms visit
www.ca11.uscourts.gov

July 24, 2006



Clarence  Maddox
Clerk, U.S. District Court
301 N MIAMI AVE STE 150
MIAMI  FL  33128-7788

**Appeal Number: 04-12695-AA**
Case Style: USA v. Jose Godinez
District Court Number:  03-20566 CR-JAL

The enclosed certified copy of the judgment and a copy of this court's opinion are hereby issued as the mandate of this court.

Also enclosed are the following:
Original Exhibits, consisting of: one psi
Original record on appeal or review, consisting of: seven volumes

The clerk of the court or agency shown above is requested to acknowledge receipt on the copy of this letter enclosed to the clerk.

A copy of this letter, and the judgment form if noted above, <u>but not a copy of the court's decision</u>, is also being mailed to counsel and pro se parties. A copy of the court's decision was previously mailed to counsel and pro se parties on the date it was issued.

Sincerely,

THOMAS K. KAHN, Clerk

Reply To: James O. Delaney (404) 335-6113

Encl.

MDT-1 (06/2006)

# United States Court of Appeals

Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia  30303

Thomas K. Kahn
    Clerk

For rules and forms visit
www.ca11.uscourts.gov



July 24, 2006

Clarence Maddox
Clerk, U.S. District Court
301 N MIAMI AVE STE 150
MIAMI FL 33128-7788

**Appeal Number: 04-12457-AA**
Case Style: USA v. Dwight Walden
District Court Number:  03-20566 CR-JAL

The enclosed certified copy of the judgment and a copy of this court's opinion are hereby issued as the mandate of this court.

Also enclosed are the following:
    Original Exhibits, consisting of: one folder, three psi's
    Original record on appeal or review, consisting of: thirty-one volumes, three volumes supplemental

The clerk of the court or agency shown above is requested to acknowledge receipt on the copy of this letter enclosed to the clerk.

A copy of this letter, and the judgment form if noted above, <u>but not a copy of the court's decision</u>, is also being mailed to counsel and pro se parties. A copy of the court's decision was previously mailed to counsel and pro se parties on the date it was issued.

    Sincerely,

    THOMAS K. KAHN, Clerk

    Reply To: James O. Delaney (404) 335-6113

Encl.

MDT-1 (06/2006)

JOSE L. GODINEZ,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

## JUDGMENT

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.



Entered: April 10, 2006
For the Court: Thomas K. Kahn, Clerk
By: Gilman, Nancy

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

```
FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 10, 2006
THOMAS K. KAHN
CLERK
```

No. 04-12457

D. C. Docket No. 03-20566-CR-JAL

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DWIGHT WALDEN,
ROY GEER,
LIONEL GALLIMORE,

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

Defendants-Appellants.

No. 04-12695

D. C. Docket No. 03-20566-CR-JAL

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

<table>
<tr><td>FILED</td></tr>
<tr><td>U.S. COURT OF APPEALS</td></tr>
<tr><td>ELEVENTH CIRCUIT</td></tr>
<tr><td>APR 10, 2006</td></tr>
<tr><td>THOMAS K. KAHN<br>CLERK</td></tr>
</table>

No. 04-12457

D. C. Docket No. 03-20566-CR-JAL

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DWIGHT WALDEN,
ROY GEER,
LIONEL GALLIMORE,

Defendants-Appellants.

No. 04-12695

D. C. Docket No. 03-20566-CR-JAL

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE L. GODINEZ,

                                                Defendant-Appellant.

---

Appeals from the United States District Court
for the Southern District of Florida

---

**(April 10, 2006)**

Before BARKETT and WILSON, Circuit Judges, and REAVLEY\*, District Judge.

PER CURIAM:

      Dwight Walden, Jose Godinez, Lionel Gallimore, and Roy Geer appeal their convictions and sentences imposed after a jury found them guilty of conspiracy to import cocaine, in violation of 21 U.S.C. §§ 952(a), 963, and 960(b)(1) (Count 1); attempted importation of cocaine, in violation of 21 U.S.C. §§ 952(a), 963, and 960(b), and 18 U.S.C. § 2 (Count 2); conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 846, and 841(b)(1)(A) (Count 3); and attempted possession with intent to distribute cocaine, 21 U.S.C. §§ 841(a)(1), 846, and 841(b)(1)(A), and 18 U.S.C. § 2 (Count 4).

---

      \*Honorable Thomas Reavley, United States Circuit Judge for the Fifth Circuit, sitting by designation.

2

The appellants raise several arguments.  First, Walden, Godinez, Gallimore, and Geer claim the evidence was insufficient to sustain their convictions.  Second, Godinez contends that the district court committed reversible error by restricting the cross-examination of government witnesses and his presentation of evidence pertaining to his defenses of lack of knowledge and specific intent.  Third, Walden, Gallimore, and Geer argue that the district court erred by allowing the redaction of a post-arrest statement by Godinez in violation of *Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968).  Fourth, Gallimore and Godinez claim that the district court committed reversible error under *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), in imposing their sentences.  We affirm the convictions of Walden, Godinez, Gallimore, and Geer, but we vacate and remand the sentences of Godinez and Gallimore.

## I. Facts

The security manager of Seaboard Marine, a shipping company, contacted the Bureau of Immigration and Customs Enforcement ("BICE") upon receipt of information that the crew of the vessel Seaboard Florida discovered duffel bags filled with cocaine.  BICE agents and other law enforcement personnel boarded the vessel, inspected the bags, replaced the suspected cocaine with sham cocaine, and put the bags back in the location where they were discovered.  BICE Agents

3

Figueroa, Keck, and Landry remained on board to conduct surveillance.

Shortly after the vessel was cleared for boarding and cargo unloading in Miami, the agents observed several men go from the dock onto the main cargo deck from which the cargo containers were to be unloaded. Figueroa, dressed as a crew member and stationed just outside the vessel, testified that he observed several men go on board and then saw a man, later identified as Geer, drive a yellow work truck onto the main deck. Keck testified that he saw the four defendants walk toward the storage area, also referred to at trial as the "junk pile" area, where Keck was hiding. Keck said that Walden stood on top of a wooden spool in the junk pile area while a flashlight beam panned over the space. According to Keck, Walden made hand gestures in the direction of the other defendants and then bent down and picked up one of the duffel bags, walking away with it. Keck then saw Godinez pick up the other bag and start to walk out of the area.

After the duffel bags were moved from the storage area, the agents arrested the men. Landry testified that at the BICE office, Godinez consented to an interview with the agents. Godinez stated that Geer directed him to follow him and pick something up. Godinez said that he suspected that it was something illegal, and that he was to receive an unknown amount of money for this task. The

4

presentence investigation report ("PSI") also contained a statement that 58.95 kilograms of cocaine were seized.  At trial, the parties stipulated to the amount of cocaine and that the cocaine had a total value of approximately $1,061,100 to $1,179,000.

## II. Discussion

### A. Sufficiency of the Evidence

We review claims regarding sufficiency of the evidence supporting a conviction de novo, resolving "all reasonable inferences and credibility evaluations in favor of the jury's  verdict." *United States v. Rudisill*, 187 F.3d 1260, 1267 (11th Cir. 1999) (internal quotes omitted).  The evidence need not "exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt," because "[a] jury is free to choose among the constructions of the evidence." *United States v. McDowell*, 250 F.3d 1354, 1365 (11th Cir. 2001) (internal quotes omitted).  "The jury's verdict must stand unless no trier of fact could have found guilt beyond a reasonable doubt." *United States v. Lyons*, 53 F.3d 1198, 1202 (11th Cir. 1995).

To support appellants' conspiracy convictions (Counts 1 and 3), the government must prove "(1) that a conspiracy existed, (2) that the defendant knew of it, and (3) that the defendant, with knowledge, voluntarily joined it." *United*

5

*States v. Perez-Tosta*, 36 F.3d 1552, 1557 (11th Cir. 1994). The government may show participation in a conspiracy by direct or circumstantial evidence, *United States v. Anderson*, 326 F.3d 1319, 1329 (11th Cir. 2003), and need prove only "that the defendant[s] knew the general nature and scope of the conspiracy." *United States v. Clark*, 732 F.2d 1536, 1539 (11th Cir. 1984). Association with a conspirator or presence at the scene of the crime is not in itself sufficient to prove knowing participation in a conspiracy, but presence is nonetheless a "material and probative factor that the jury may consider in reaching its verdict." *United States v. Iglesias*, 915 F.2d 1524, 1527 (11th Cir. 1990).

To sustain appellants' convictions for attempted importation of cocaine and attempted possession with intent to distribute cocaine (Counts 2 and 4), the government must prove that the appellants (1) acted with the type of culpability required to import cocaine or to possess cocaine with the intent to distribute it, and (2) engaged in conduct which constituted a substantial step toward the commission of the crime under circumstances strongly corroborative of their criminal intent. *See United States v. Forbrich*, 758 F.2d 555, 557 (11th Cir. 1985).

Whether the evidence is sufficient to sustain the verdicts in this case is a close call. Inexplicably absent from the government's presentation is expert testimony by an experienced narcotics agent about the significance of certain

6

conduct or methods of operation unique to the drug distribution business. *See United States v. Butler*, 102 F.3d 1191, 1199 (11th Cir. 1997). However, "it need not be proved that the defendant[s] had knowledge of the particular drug involved, as long as [they] knew [they were] dealing with a controlled substance." *United States v. Gomez*, 905 F.2d 1513, 1514 (11th Cir. 1990). The government is not required to rely on direct evidence to show knowledge, as "knowledge can be based upon inferences from the surrounding circumstances." *United States v. Peart*, 888 F.2d 101, 104 (11th Cir. 1989) (per curiam).

Here, there was sufficient circumstantial evidence to support the jury's verdicts. While the appellants are correct that mere presence is not enough to support a conviction for conspiracy, the evidence at trial showed that the men were not just casually present at the port that day. The header of the ship, Larry Burney, testified that Walden, a gantry crane operator, had no reason to be on the ship, as it was normally easier and faster to use forklifts to remove containers from the main deck than to use a gantry crane. Also, Godinez was supposed to work the yard as stevedore superintendent, but Burney also stated that there is no reason for a yard supervisor to come on the vessel to look around before it is unloaded. Nor was Gallimore assigned to work on the Seaboard Florida that day. Although Burney saw Gallimore on the docks, Gallimore never asked about working on the main

7

deck. Finally, Geer was originally scheduled to work on the Seaboard Star that day but later switched his shift to work the Seaboard Florida. Based upon this evidence, the jury was entitled to infer that the appellants were not merely present on the Seaboard Florida, but rather that they knowingly and voluntarily participated in a conspiracy.

The appellants also engaged in acts that "strongly suggest their knowledge and that they acted with the kind of culpability required to possess cocaine knowingly and wilfully and with the intent to distribute it." *McDowell*, 250 F.3d at 1366. When the Seaboard Florida arrived at the Port of Miami several hours behind schedule, Geer approached the first mate of the ship, Georkys Noriega, for the discharge plan for unloading the ship. Geer asked him twice why the boat was late. Noriega responded that "they didn't get anything, everything is all right." He then saw Geer enter the vessel by driving a yellow gear truck onto it, which surprised Noriega because he had never seen the truck on the ship before.

Additionally, there were forty containers on the main deck that needed to be unloaded. The duffel bags were located in the junk pile area, which could only be accessed by maneuvering through the containers on the deck and the wires, pipes, and bags of sawdust in the junk pile area itself. Within ten minutes after the boat cleared, Godinez, Gallimore, and Walden headed straight to the junk pile area.

8

Geer then pulled up to the area in a yellow truck.  Based upon these facts, a jury reasonably could have inferred that the appellants knew the precise location of the contraband and previously had conspired to possess it.

Once in the junk pile area, the appellants engaged in a series of acts that the jury reasonably could have interpreted as the execution of a plan to possess to cocaine.  According to the testimony of the BICE agents who conducted surveillance on the ship, Walden initially entered the junk pile and then stopped and stood on a wooden spool.  Walden looked in the direction of the barrels and a flashlight beam panned across the area.  After Walden jumped off the spool, he looked in the direction of Gallimore and Godinez and gestured with his hand.  Geer was looking in Walden's direction when he gestured.  After making the gesture, Walden turned in the direction of Gallimore and Godinez.  Gallimore then made a hand gesture looking down the pathway and in the direction of Walden.  As soon as Gallimore did this, Walden bent down and began to remove the wood chips from the top of the duffel bags containing the sham cocaine.  Walden stopped, looked at Geer, and motioned.  At that time Geer headed back out of the pathway leading to the junk pile area.  Once Geer left the junk pile, Walden looked in the direction of Godinez and motioned.  He then bent down to pick up the first duffel bag, pausing momentarily to gesture again.  Walden then started away from the

9

area. At that point, Godinez picked up the second bag and walked down the pathway away from the junk pile area. Upon seeing this, BICE agents emerged from their hiding places to arrest the men.

When one of the agents yelled "police," Godinez was standing with his hands in the bag. Gallimore disobeyed initial police commands and fled. The agents arrested Geer, Gallimore, Godinez, and Walden and took them to the BICE office, where Godinez gave an inculpatory statement. At trial, Agent Keck testified that: "Jose Godinez stated that he was directed to go pick up some stuff or something. He stated that the bags were to be placed on a truck. That he suspected what he was picking up was illegal, and he stated to me that I caught him red handed."

Based on this evidence, a jury reasonably could have found that Walden, Godinez, Gallimore, and Geer were guilty of the crimes charged. Appellants argue that the government did not prove that they knew the bags contained cocaine. However, the government need only show, by direct or circumstantial evidence, that the appellants knew the bags contained a controlled substance. A reasonable jury could infer that the appellants would not have been entrusted with bags containing in excess of one million dollars worth of cocaine without knowing what the bags contained. *See McDowell*, 250 F.3d at 1366, (citing *United States v.*

10

*Quilca-Carpio*, 118 F.3d 719, 722 (11th Cir. 1997) (per curiam) ("A reasonable jury could infer from the quantity of drugs seized that a 'prudent smuggler' is not likely to entrust such valuable cargo to an innocent person without that person's knowledge.")). Therefore, there was sufficient evidence to support the jury's guilty verdicts, and we affirm the convictions of Walden, Godinez, Gallimore, and Geer.

## B. Restrictions on Cross-Examination and Presentation of Evidence

Godinez argues that the district court erred in restricting both the cross-examination of essential government witnesses and the Godinez's presentation of evidence supporting his defense of lack of knowledge and specific intent. Godinez claims that the redaction of his statement was "so great as to change the full meaning of the statement," and that the district court's limitations on cross-examination as to the full statement made it impossible for him to show that the redacted statement was not an "accurate recounting" of the full statement.[1]

---

[1] Prior to its redaction, Godinez's post-arrest statement was recounted by BICE Agent Landry in a sworn affidavit as follows:

> Godinez stated that he was directed by Geer to follow him to go pick up something. Godinez stated that he assumed that what he was picking up was something illegal and that he was to receive an unknown amount of money. Godinez stated he followed Walden to the location of the duffel bags and that Walden directed him on the location of the second duffel bag. Godinez stated that the duffel bags were to be placed on the yellow work truck that Geer drove into [sic] the vessel.

11

For this reason he claims that he was unable to correct the statement. He was also foreclosed from eliciting testimony concerning the fact that crew members of the Seaboard Florida had cell phones that they could have used to alert onshore participants that the real cocaine had been replaced with sham cocaine. Further, he claims he was unable to fully develop the defense expert witness's testimony as to the physical conditions aboard the ship under which the agents had seen appellants immediately prior to their arrests. Finally, Godinez argues that the prosecutor's reference to his statement as a "confession" in the government's closing argument exacerbated any prejudice that occurred.

We review a district court's evidentiary rulings for a clear abuse of discretion. *United States v. Baker*, 432 F.3d 1189, 1202 (11th Cir. 2005). "The trial court has broad discretion under [Federal] Rule [of Evidence] 611(b) to

---

Another version of the statement, produced by the government during discovery, is as follows:

> Godinez stated that Geer told him to follow or get into the truck so they could go pick up the "stuff." Godinez stated that Walden was the one who jumped onto the wooden spool and pointed out the two duffel bags. Also, that Walden was the one who secured the first duffel bag and left the area with it. Godinez stated that they were to load the duffel bags onto the yellow truck. Godinez went on to state that he didnt [sic] know what they were picking up but that he suspected that it was illegal. Godinez also stated to me that I got him (Godinez) "red-handed" but that he could get out of this situation.

Agent Keck provided the redacted version of the statement at trial, testifying that: "Jose Godinez stated that he was directed to go pick up some stuff or something. He stated that the bags were to be placed on a truck. That he suspected what he was picking up was illegal, and he stated to me that I caught him red handed."

12

determine the permissible scope of cross-examination . . . ." *United States v. Jones*, 913 F.2d 1552, 1564 (11th Cir. 1990). "The district court's discretion in limiting the scope of cross-examination is subject, however, to the requirements of the Sixth Amendment," which includes the right of cross-examination. *United States v. Lankford*, 955 F.2d 1545, 1548 (11th Cir. 1992). "Cross-examination has traditionally been allowed for the purpose of impeaching or discrediting the witness." *Id.* Nonetheless, "[t]he right to cross-examine is not unlimited . . . because once there is sufficient cross-examination to satisfy the Confrontation Clause, further questioning is within the district court's discretion." *United States v. Diaz*, 26 F.3d 1533, 1539 (11th Cir. 1994). "The test for the Confrontation Clause is whether a reasonable jury would have received a significantly different impression of the witness'[s] credibility had counsel pursued the proposed line of cross-examination." *Id.* at 1539-40 (internal quotes omitted).

Here, the district court's rulings did not constitute an abuse of discretion. Godinez was able to examine the defense witness as to the general conditions on the ship with respect to lighting, heat, and cargo configuration, allowing the jury to consider the possibility that BICE agents were not able to accurately observe the defendants on July 3, 2003. Godinez's claim that the redaction of his statement changed "the full meaning" thereof is unsupported by the record. Further, the

13

testimony that Godinez sought to elicit regarding cell phones was not particularly relevant and the district court's decision to disallow this line of questioning did not create a "significantly different impression of the witness'[s] credibility." *See id.* As such, none of the court's rulings constituted an abuse of discretion.

To the extent that Godinez claims that the district court's rulings coupled with the prosecutors' remarks characterizing Godinez's statement as a "confession" constitute reversible cumulative error, this argument is without merit. "The harmlessness of cumulative error is determined by conducting the same inquiry as for individual error – courts look to see whether the defendant's substantial rights were affected." *Baker*, 432 F.3d at 1223 (internal quotes omitted). In determining whether cumulative error occurred, we consider "'the nature and number of the errors committed; their interrelationship, if any, and combined effect; how the district court dealt with the errors as they arose (including the efficacy – or lack of efficacy – of any remedial efforts); [ ] the strength of the government's case,' and the length of trial." *Id.* (citations omitted) (brackets in original). Here, these factors do not counsel in favor of reversal. The limitations on cross-examination and other evidentiary rulings were proper, and even assuming that the prosecutor's remarks were improper, the jury was instructed that the lawyers' statements were not evidence. *See Shriner v.*

14

*Wainwright*, 715 F.2d 1452, 1459 (11th Cir. 1983) ("[W]ith a properly instructed jury, there is nothing to show the jury relied on the prosecutor's remarks."). Therefore, we affirm Godinez's convictions.

### C. *Bruton* Redaction

Walden, Gallimore, and Geer argue that the use of the *Bruton*-redacted statement at trial was improper, as it implicated them in the crime by inference and violated their rights under the Confrontation Clause and *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Gallimore claims the statement referenced others generally, as Godinez stated that he was acting under the control of another and that he was to place the duffel bag in the back of a pick-up truck belonging to another. Geer argues that he was linked to the statement because Godinez mentioned a truck, and in closing argument, the prosecutor linked Geer to that truck. Walden contends that he was connected to the statement through the evidence that his hard hat and gloves were found in the truck and through the prosecutor's closing argument. Additionally, they claim that the district court's denial of their motions for severance constituted reversible error.

We review a district court's evidentiary rulings for clear abuse of discretion. *Baker*, 432 F.3d at 1202. We likewise review the denial of a motion for severance

15

for abuse of discretion. *United States v. Garcia*, 405 F.3d 1260, 1272 (11th Cir. 2005) (per curiam).

In *Bruton*, the Supreme Court held that "because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt, admission of [the co-defendant's] confession in [a] joint trial violated petitioner's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment." 391 U.S. at 126, 88 S. Ct. at 1622. However, no *Bruton* problem exists in cases where the statement "was not incriminating on its face, and became so only when linked with evidence introduced later at trial." *Richardson v. Marsh*, 481 U.S. 200, 208, 107 S. Ct. 1702, 1707, 95 L. Ed. 2d 176 (1987). "Thus, '[f]or *Bruton* to apply, a codefendant's statement must be clearly inculpatory standing alone.'" *United States v. Brazel*, 102 F.3d 1120, 1140 (11th Cir. 1997) (citation omitted) (brackets in original). Here, any linkage of Walden, Gallimore, or Geer to the statement is inferential and only possible when considering the statement with other trial evidence. Moreover, a jury is presumed to follow its instructions, and the district court more than once instructed the jury that the statement was only to be considered in reference to Godinez. *Brazel*, 102 F.3d at 1145 (juries presumed to follow instructions); *see also Marsh*, 481 U.S. at 208, 107 S. Ct. at 1708 (Where

16

there exists the necessity of linking the confession with other evidence introduced at trial, "there does not exist the overwhelming probability of [the jurors'] inability to [disregard an incriminating reference] that is the foundation of *Bruton's* exception to the general rule [that a jury follows its instructions]."). Therefore, the district court did not err in allowing the use of the redacted statement or in denying the appellants' motions for severance.

### D. *Booker* Error

Gallimore claims that it was error for the district court to sentence him based on a drug quantity which was not found by a jury and that he should not have been sentenced as a career offender because the court determined his status in violation of *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). Godinez likewise argues that the district court erred in enhancing his sentence based on uncharged sentence enhancements, including drug quantity and obstruction of justice, under *Blakely*. The government concedes that the district court committed reversible *Booker* error in sentencing Gallimore. However, the government argues that Godinez's objections in the district court did not suffice to preserve the issue on appeal, and that Godinez cannot satisfy the plain error standard. *See United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005) (when *Booker* objection is raised for the first time on appeal, we review for plain

17

error affecting substantial rights).

"[A] defendant may preserve a constitutional *Booker* objection in a number of ways, and need not object explicitly on constitutional or Sixth Amendment grounds." *United States v. Munoz*, 430 F.3d 1357, 1374 (11th Cir. 2005). We will consider an defendant's *Booker* objection on appeal where: "(1) the defendant's objection at trial invoked *Booker*, *Blakely*, or their direct predecessors; (2) the defendant objected that a fact relevant to a sentencing enhancement 'should go to the jury;' or (3) the defendant argued that a fact relevant to a sentencing enhancement must be proved beyond a reasonable doubt." *Id.*

Here, the court instructed the jury on the elements of conspiracy, and Godinez objected to this instruction. The instruction read:

> The Government does not need to prove that each Defendant had knowledge of the particular drugs involved, as long as he knew he was dealing with a controlled substance or substances. The Government also does not need to prove that each Defendant knew the quantity of the controlled substances.

Godinez objected, saying, "I just want to posit an objection to the fact the government need not prove that the defendant had knowledge of the particular drugs involved. And I also object to the last line, the government doesn't need to prove the quantity of the controlled substance." When asked what his objection was, Godinez stated, "My objection is the government does have to prove that Mr.

18

Godinez knew that the agreement or the plan was to import more than five kilograms of cocaine." Such an objection suffices to preserve both statutory and constitutional *Booker* issues because Godinez argued that the jury should determine a relevant fact; here, the drug amount.

Because Godinez preserved the issue, we will reverse unless the government shows the error is harmless. *United States v. Mathenia*, 409 F.3d 1289, 1291 (11th Cir. 2005) (per curiam). There are two types of *Booker* error: "(1) the constitutional error of using extra-verdict enhancements to reach a Guidelines result that is binding on the sentencing judge and (2) the statutory error of applying the Guidelines in a mandatory fashion." *United States v. Cain*, 433 F.3d 1345, 1347 (11th Cir. 2005). A constitutional error is harmless if "the government can show, beyond a reasonable doubt, that the error did not contribute to the defendant's ultimate sentence." *Mathenia*, 409 F.3d at 1291-92. A "non-constitutional error is harmless if, viewing the proceedings in their entirety, a court determines that the error did not affect the [sentence], or had but a very slight effect. If one can say with fair assurance . . . that the [sentence] was not substantially swayed by the error, the [sentence] is due to be affirmed even though there was error." *Id.* at 1292 (quotation marks and citations omitted) (alterations in original).

19

In Godinez's case, constitutional *Booker* error occurred when the district court relied on judicially-found facts in its application of an obstruction of justice enhancement in a mandatory guidelines system, and statutory *Booker* error occurred because Godinez was sentenced under a mandatory guidelines system.[2] The government points to nothing in the record that indicates that either type of *Booker* error was harmless. Therefore, the government has failed to meet its burden, and we vacate and remand the sentences of both Gallimore and Godinez.[3]

## III. Conclusion

Upon careful consideration of the record, the parties' briefs, and arguments on appeal, we determine that there was sufficient evidence to support the jury's verdicts. Further, the district court did not commit reversible error by limiting Godinez's cross-examination or by permitting the use of the *Bruton*-redacted statement. However, finding reversible *Booker* error, we vacate and remand the sentences of both Gallimore and Godinez.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**

---

[2] Godinez argues that constitutional *Booker* error occurred because the district court enhanced his sentence based on a drug quantity not found by the jury. However, Godinez stipulated to this amount at trial and lodged no objection to the drug quantity contained in the PSI. Therefore, Godinez admitted the drug quantity and no *Booker* error occurred on this ground. *See United States v. Shelton*, 400 F.3d 1325, 1330 (11th Cir. 2005) (failure to object to PSI's factual statements constitutes admission of those facts).

[3] We find no merit in the appellants' other sentencing issues.

20

BARKETT, Circuit Judge, dissenting:

This record is completely devoid of any evidence whatsoever pertaining to any appellants' knowledge of the presence of any controlled substance on the Seaboard Florida. To support convictions on both the attempt and conspiracy counts, all of which relate to cocaine, the government must prove that appellants acted with the specific intent required to commit these inchoate crimes. Without any evidence of appellants' knowledge of the presence of drugs, which the government conceded at oral argument, the government cannot prove specific intent. Affirmance of the convictions in this case contravenes existing law. Accordingly, I dissent.

For the attempt counts, the government must prove that the appellants acted with the "kind of culpability required to possess cocaine knowingly and wilfully and with the intent to distribute it." United States v. McDowell, 250 F.3d 1354, 1365 (11th Cir. 2001); see also United States v. Martin, 747 F.2d 1404, 1410 (11th Cir. 1984) (describing attempt as a specific intent crime); Quality Foods de Centro America, S.A. v. Latin Am. Agribusiness Dev. Corp., 711 F.2d 989, 996 n.7 (11th Cir. 1983) ("[S]pecific intent is required in attempt cases."). Similarly, for the conspiracy counts, the government's burden is not merely to prove beyond a reasonable doubt (1) an agreement between two or more people, (2) the object of

21

which is to do either an unlawful act or a lawful act by unlawful means, United States v. Toler, 144 F.3d 1423, 1426 (11th Cir. 1998), but to prove an agreement to commit the specific crime that forms the object of the conspiracy, in this case conspiracy to import cocaine or conspiracy to possess with intent to distribute cocaine, United States v. Charles, 313 F.3d 1278, 1286 (11th Cir. 2002). See id. ("[W]e agree with the government that the evidence presented at trial was sufficient to convict [the appellant] of his involvement in a conspiracy. . . . However, . . . the government presented no evidence that [he] knew the conspiracy involved the theft of narcotics, and no reasonable inference could support such a finding. . . . We therefore reverse [his] convictions, both of which are predicated upon his knowledge of a conspiracy to possess cocaine." (citation omitted)); see also United States v. Schwarz, 283 F.3d 76, 110 (2d Cir. 2002) (reversing conspiracy conviction because government proved a conspiracy but failed to prove specific intent to commit the charged conspiracy).

Without knowledge of the presence of drugs, appellants cannot have the specific intent required for the conspiracy and attempt charges in this case. Indeed, we frequently reverse convictions for specific intent crimes relating to narcotics where the government fails to show defendants' knowledge of the narcotics charged in the indictment. For example, in United States v. Martinez, 83 F.3d 371

22

(11th Cir. 1996), we reversed a conviction for conspiracy to possess cocaine even though the government introduced evidence that defendant Gomez had been told by co-conspirator Gallo that they were going to steal money, that closed suitcases were stolen, and that Gallo had told another person that he had "men and guns ready" to steal cocaine. Id. at 374. We held that Gallo's statement was "insufficient, alone, to prove that Gomez knew he was going to steal cocaine." Id. In United States v. Perez-Tosta, 36 F.3d 1552 (11th Cir. 1994), we similarly reversed a conspiracy conviction for insufficient evidence because the government did not establish beyond a reasonable doubt that Tosta knew about the drugs. While the government introduced evidence showing that Tosta was a "runner" for the keys and registration papers for a truck with concealed compartments containing narcotics, that he was sitting in a parked car where smugglers were preparing to offload the drugs, and that he was riding in a counter-surveillance vehicle near the site of a cocaine transfer, we noted that the evidence was insufficient to convict. Id. at 1559; see also United States v. Kelly, 749 F.2d 1541 (11th Cir. 1985).

No one argues with the proposition that "[t]he government is not required to rely on direct evidence to show knowledge," Majority Op. at 6. The troubling point is that there is nothing in this record from which it can even be inferred that

23

these appellants "engaged in acts that 'strongly suggest their knowledge and that they acted with the kind of culpability required to possess <u>cocaine</u> knowingly and wilfully and with the intent to distribute it.'" Majority Op. at 7 (quoting <u>McDowell</u>, 250 F.3d at 1366).  Indeed, the majority's reliance on <u>McDowell</u> is inapposite.

In <u>McDowell</u>, the two defendants were linked in numerous ways to the drugs they were charged with attempting to possess, and this court placed great importance on defendants' acts of concealment.  First, the defendants intentionally used a number of false documents to gain access to the area where the cocaine was located, 250 F.3d at 1358-59, unlike this case where the appellants were lawfully present in the port.  Second, in <u>McDowell</u> both of the defendants were carrying business cards with the number of the container full of cocaine written on them. <u>Id.</u> at 1360-61.  Third, in <u>McDowell</u> the district court admitted evidence of a prior incident in which a truck from the same company used by the two defendants had entered the same premises using false documentation a few weeks earlier, as indicative of the modus operandi of defendants' conspiracy to import cocaine, namely the so-called "rip method," whereby "duffel bags of cocaine are placed inside a container with an otherwise legitimate shipment." <u>Id.</u> at 1364.  Finally, the defendants in <u>McDowell</u> repeatedly lied to law enforcement officers following their arrests.  <u>Id.</u> at 1360-62.  In finding that there was sufficient evidence to

support an attempt conviction, this court placed significant emphasis on defendant's "acts and statements of falsity and concealment which strongly suggest their knowledge and that they acted with the kind of culpability required to possess cocaine knowingly and wilfully and with the intent to distribute it." Id. at 1366. Indeed, these acts of concealment seem to have been determinative in this court's analysis in McDowell. Id. at 1367 ("Quite simply, a jury was free to infer from appellants' false statements and acts of concealment, evidence of their guilty knowledge, culpability, and intent to import cocaine and attempt to possess with intent to distribute cocaine."). Moreover, there was evidence in McDowell regarding the usual packaging of cocaine. Id. at 1364

In contrast, the government here conceded that it presented no evidence at trial regarding appellants' knowledge of the presence of cocaine. As the majority notes, "[i]nexplicably absent from the government's presentation is expert testimony by an experienced narcotics agent about the significance of certain conduct or methods of operation unique to the drug distribution business." Majority Op. at 6. Instead, the majority evinces appellants' knowledge of the presence of drugs from actions and statements on the day of the incident which were not acts of concealment or otherwise incriminatory, but rather neutral in character – such as the fact that Geer asked the first mate why the boat was late,

25

and the fact that Godinez, Gallimore, and Walden walked towards the area of the ship where the bags were located. Majority Op. at 7-8. None of these actions, even when taken together, relate to cocaine or any other controlled substance.

Although based on this record appellants could have been thought to be retrieving contraband from the junk pile area, no evidence permitted the jury to find, beyond a reasonable doubt, that it was narcotics that the appellants knew they were retrieving from the junk pile. Often, contraband other than narcotics is imported. See, e.g., United States v. Thirty-Seven Photographs, 402 U.S. 363 (1971) (forfeiture of obscene photographs as contraband at airport); Compania Naviera Vascongada v. United States, 354 F.2d 935 (5th Cir. 1966) (affirming forfeiture of undeclared duty free goods seized in the port of Mobile, Alabama). Appellants' actions may well have indicated their participation in a criminal venture, but in order to convict on either an attempt or conspiracy charge the government needs to prove the defendants acted with the specific intent to commit the charged crime, and this they have failed to do. See Charles, 313 F.3d at 1286. I would therefore reverse the convictions.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

26